## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALYSSA ROSE and MYJORIE PHILIPPE, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>HAIN CELESTIAL GROUP, INC.<br><br>           Defendant. | Case No. 2:21-cv-01118-JS-AYS<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Alyssa Rose and Myjorie Philippe ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Hain Celestial Group, Inc. ("Defendant" or "Hain"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, on the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1. Plaintiffs bring this class action on behalf of themselves and other all other parents and persons nationwide who bought Defendant's baby food products containing harmful heavy metals such as inorganic arsenic, lead, cadmium, and mercury. The products at issue include, but are not limited to, the following: Hain's Earth's Best Whole Grain Rice Cereal, Whole Grain Oatmeal Cereal, Organic Sensitivity Infant Formula With Iron Milk Based Power, Sweet Potatoes Organic Baby Food,

1

Carrots Organic Baby Food, Winter Squash Organic Baby Food, Peas Organic Baby Food, Apples Organic Baby Food, Pears Organic Baby Food, Spinach and Potato Organic Baby Food, Chicken and Brown Rice Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, Organic Chicken Pot Pie Homestyle Meal Puree, Organic Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Puree, Sesame Street Organic Peanut Butter Baked Corn Puffs, Sesame Street Organic Fruit Yogurt Smoothie – Apple Blueberry, Sunny Days Snack Bars – Sweet Potato Carrot (referred to herein as "Earth's Best Products").[1]

2.      Numerous scientific studies conducted over the last several decades have confirmed that inorganic arsenic, lead, cadmium, and mercury are developmental neurotoxins that are harmful to a baby's developing brain and nervous system.  There are no established safe levels of these substances for baby foods.

3.      Babies and children who consume inorganic arsenic, lead, cadmium, or mercury are at risk of suffering health problems, a loss of intellectual capacity and behavioral problems such as attention-deficit/hyperactivity disorder ("ADHD"), among other things.  Even the consumption of small amounts over time can increase the risk of bladder, lung and skin cancer, and Type 2 Diabetes. Moreover, medical professionals and scientists alike agree that early exposure to heavy metals can have long-term effects that are irreversible.

4.      On February 4, 2021, the U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform issued a detailed report titled, *Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* ("Report").  The Report revealed that some of the largest baby food manufacturers in an industry that generates over $50 billion annually in sales knowingly distributed and sold baby food containing harmful heavy metals such as inorganic arsenic, lead, cadmium, and mercury.  Hain was identified as one of four companies knowingly selling baby foods containing harmful heavy metals.

5.      Hain manufactures, warrants, advertises, and sells the Earth's Best Products as being suitable and safe for consumption by babies.  Hain uniformly depicts babies on the package labeling,

---

[1] Plaintiffs reserve the right to expand the list of Hain products specifically identified herein as their investigation continues and/or they have had an opportunity to conduct discovery.

and states that products are food for babies.  Hain also says on its baby foods that "All Babies Begin Life Wholesome . . . Feed Them Accordingly," and "From the first spoonful on, you can be sure your baby's rapidly developing little body is getting only organic nutrition."  Hain's food labeling and statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the Earth's Best Products are safe and suitable for consumption by babies.

6.      As alleged herein, Defendant's marketing and advertising of its products is false, deceptive, and misleading to reasonable consumers because Defendant knows that heavy metals are harmful to babies yet sold products containing harmful heavy metals as evidenced by their own testing.  Defendant's marketing and advertising of its products is also false, deceptive, and misleading to reasonable consumers because Defendant failed to warn and disclose material facts regarding its products, namely, that they were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that their internal testing showed that their products contained harmful heavy metals; and that their internal policies permitted the sale of baby food products with harmful heavy metals.  The Defendant's distribution and sale of these products was unlawful, unfair, false, and misleading, and the Defendant was unjustly enriched at the expense of Plaintiffs and Class members.

7.      Plaintiffs and Class members would not have purchased Hain's Earth's Best Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; or that its policies permitted the sale of baby food products with harmful levels of heavy metals.

8.      Plaintiffs bring this action and asserts claims on behalf of themselves and all other similarly situated persons (defined below) for breach of the implied warranty of merchantability, fraud, deceptive, false, and misleading advertising and business practices, and unjust enrichment.

## **JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and many members of the proposed Class are citizens of different states than the Defendant.

10.     This Court has personal jurisdiction over Defendant Hain Celestial Group, Inc. because Defendant is headquartered in the State of New York, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts substantial business in this District.

12.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

**THE PARTIES**

**Plaintiffs**

13.     Plaintiff Alyssa Rose is a resident and citizen of Pennsylvania. Plaintiff Rose has bought Hain's Earth's Best Products, including Earth's Best Whole Grain Rice Cereal, Whole Grain Oatmeal Cereal, and Sweet Potatoes Organic Baby Food, from Walmart and Giant Food retail stores in various locations around her home in Aston, Pennsylvania.  Plaintiff Rose has regularly purchased these products since 2017 and reviewed and relied on the representations on the packaging and believed the products to be safe and suitable for babies.  Plaintiff Rose's purchases took place during a time in which third-party testing showed that the Earth's Best Products contained harmful heavy metals.  If Plaintiff Rose had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of heavy metals, Plaintiff Rose would not have purchased the products or would have paid less for them.

14.     Plaintiff Myjorie Philippe is a resident and citizen of Massachusetts. Plaintiff Philippe has bought Hain's Earth's Best Products, including Earth's Best Whole Grain Oatmeal Cereal, Whole Grain Rice Cereal, and Sweet Potatoes Organic Baby Food, from Shaw's, Target, Whole Foods, and Market Basket retail stores in various locations in Massachusetts, including Marlborough, Groton, Leominster, Hudson, Shrewsbury, and Worcester. Plaintiff Philippe has regularly purchased these products since 2017, reviewed and relied on the representations on the packaging, and believed the products to be safe and suitable for babies. Plaintiff Philippe's purchases took place during a time in

which third-party testing showed that the Earth's Best Products contained harmful heavy metals. If Plaintiff Philippe had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of heavy metals, Plaintiff Philippe would not have purchased the products or would have paid less for them.

### Defendant

15.     Defendant Hain Celestial Group, Inc. is a citizen of Delaware, where it is incorporated, and New York because it maintains its principal place of business at 111 Marcus Avenue, Lake Success, New York. Defendant does business throughout the United States. Defendant's baby food products are sold throughout the United States at large and small brick-and-mortar stores and online retailers.

### FACTUAL ALLEGATIONS

### There are No Established Safe Levels of Heavy Metals in Baby Food

16.     According to the U.S. House of Representatives' Report, "Children's exposure to toxic heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior."  The Report highlights numerous studies conducted over the last several decades analyzing the effects of early exposure of heavy metals and concluding that the harm is long-standing and irreversible.

17.     Babies are particularly vulnerable to the effects from exposure to heavy metals because they are small, and their organs are developing.  Specifically, exposure to heavy metals during a baby's developmental stage can lead to "'untreatable and frequently permanent' brain damage, which may result in 'reduced intelligence, as expressed in terms of lost IQ points, or disruption in behavior.'"[2]  According to Tom Neltner, chemical policy director for the Environmental Defense Fund ("EDF") which has studied lead in food for 25 years, "Exposure to these toxic heavy metals affects babies' brain development and nervous system, it affects their behavior, permanently decreases IQ,

---

[2] Report at page 9.

and, if you want to boil it down to dollars, their lifetime earnings potential."

18.   A published study titled, *A Strategy for Comparing the Contributions of Environmental Chemicals and Other Risk Factors to Neurodevelopment of Children*, found that exposure to heavy metals such as lead are "associated with 40,131,518 total IQ point loss in 25.5 million children (or roughly 1.57 lost IQ points per child)—more than the total IQ losses associated with preterm birth (34,031,025), brain tumors (37,288) and traumatic brain injury (5,827,300) combined."[3]

19.   The Food and Drug Administration ("FDA") has concluded that inorganic arsenic, lead, cadmium, and mercury are hazardous to babies and children and have "no established health benefit" and "lead to illness, impairment, and in high doses, death."  Further, even low levels of these heavy metals are concerning to health and well-being.

### Inorganic Arsenic

20.   The consumption of arsenic can result in serious and life-threatening health problems. The Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") has ranked arsenic as the number one substance present in the environment that poses the most significant threat to human health.  The known health risks resulting from arsenic exposure include "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system and cognitive development in children."[4]

21.   There is no established safe level of inorganic arsenic for baby foods.  Consumer advocacy groups like Healthy Babies Bright Futures has advocated that there should be no measurable amount of inorganic arsenic in baby food, while Consumer Reports has advocated for a limit of 3 parts per billion ("ppb").

22.   For bottled water, the FDA has set a maximum level of arsenic at 10 ppb, while the Environmental Protection Agency ("EPA") and the World Health Organization ("WHO") have set a similar limit for drinking water.

---

[3] *Id.*

[4] Miguel Rodriguez-Barranco, et al. *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children: A Systematic Review and Met-Analysis* (June 1, 2013) (https://pubmed.ncbi.nlm.nih.gov/23570911) (last visited Feb. 10, 2021).

23.     Several studies have found that arsenic has a significant negative effect on neurodevelopment in children, primarily in IQ levels.  For example, a study of schoolchildren in Maine who drank water with an arsenic concentration level of more than 5 ppb showed significant decreases in "Full Scale IQ, Working Memory, Perceptional Reasoning and Verbal Comprehension scores."[5]

24.     Another study of children in Spain concluded that an increase in arsenic exposure resulted in a reduction of a child's global, gross, and fine motor function scores, and that boys were more susceptible to the neurotoxicity of arsenic.[6]

**Lead**

25.     According to the FDA, lead has no established health benefit.  Lead is the second substance, after arsenic, on the ATSDR's list of substances present in the environment potentially posing a significant threat to human health.  The consumption of low levels of lead from food and other sources has been found to contribute to 400,000 deaths every year.

26.     The Environmental Protection Agency ("EPA"), the Centers for Disease Control and Prevention ("CDC") and the American Academy of Pediatrics ("AAP") unanimously agree that there is no established "safe level of lead (Pb) in a child's blood; even low levels of Pb in the blood can result in behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia."[7] Consistent with this assessment, the AAP and the Environmental Defense Fund have proposed a maximum of 1 ppb of lead in food for babies and children.

27.     The FDA has established a maximum daily intake of lead from food (called the Interim Reference Level) of 3 μg (or 3 ppb) for kids and 12.5 μg (or 12.5 ppb) for women of childbearing age. The consumer organization Healthy Babies Bright Future has advocated for a standard of zero lead in

---

[5] Gail A. Wasserman, et al., *A Cross-Sectional Study of Well Water Arsenic and Child IQ in Maine Schoolchildren* (Apr. 1, 2014) (https://ehjournal.biomedcentral.com/articles/10.1186/1476-069X-13-23) (last visited Feb. 11, 2021).

[6] Antonio J. Signes-Pastor, et al., *Inorganic Arsenic Exposure and Neuropsychological Development of Children of 4-5 Years of Age Living in Spain* (Apr. 29, 2019) (www.ncbi.nlm.nih.gov/pmc/articles/PMC6541502/) (last visited Feb. 11, 2021).

[7] Valerie Zartarian, et al., *Children's Lead Exposure: A Multimedia Modeling Analysis to Guide Public Health Decision-Making* (Sept. 12, 2017) (https://ehp.niehs.nih.gov/doi/10.1289/ehp1605) (last visited Feb. 11, 2021).

baby food while Consumer Reports advocates for no more than 1 ppb of lead in foods and drinks for babies and children.

28.     Outside the food context, the FDA has set a maximum limit on lead of 5 ppb for bottled water.  The EPA has set an action level of 15 ppb of lead for drinking water while the WHO has set 10 ppb as a provisional guideline.

29.     Studies have shown that even low levels of lead exposure can have a negative impact on children.  In two different studies of schoolchildren in Detroit and Chicago public schools, a significant inverse relationship was found between lead exposure and test scores.  The Detroit study, in particular, found a strong correlation between early childhood lead exposure and reduced standardized test performance.[8]  In the Chicago study, higher blood level concentrations were linked to lower reading and math scores in third-grade children, with a substantial 32% increase in failing reading and math.[9]

30.     Early childhood lead exposure can result in permanent cognitive effects, as one study showed.  In that study, adults who had developmental delays associated with lead exposure continued to show cognitive deficits.[10]

31.     Several studies have also established a strong link between lead exposure and ADHD.[11]

32.     Jay Schneider, Ph.D., a professor of anatomy, pathology, and cell biology at Thomas Jefferson University in Philadelphia, has examined hundreds of children with lead exposure and believes that even the tiniest amounts of lead in children's food should be avoided.

**Cadmium**

33.     The ATSDR identifies cadmium as number seven on its list of substances present in the

---

[8] Nanhua Zhang, et al., *Early Childhood Lead Exposure and Academic Achievement: Evidence From Detroit Public Schools* (Mar. 2013) (https://pubmed.ncbi.nlm.nih.gov/23327265/) (last visited Feb. 11, 2021).

[9] Anne Evens, et al., *The Impact of Low-Level Lead Toxicity on School Performance Among Children in the Chicago Public Schools: A Population-Based Retrospective Cohort Study* (Apr. 7, 2015) (https://ehjournal.biomedcentral.com/articles/10.1186/s12940-015-0008-9) (last visited Feb. 11, 2021).

[10] Maitreyi Mazumdar, et al., *Low-Level Environmental Lead Exposure in Childhood and Adult Intellectual Function: A Follow-Up Study* (Mar. 30, 2011) (www.ncbi.nlm.nih.gov/pmc/articles/PMC3072933/) (last visited Feb. 11, 2021).

[11] Gabriele Donzelli, et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019) (www.mdpi.com/1660-4601/16/3/382/htm).

environment that potentially poses a significant threat to human health.  Cadmium, like inorganic arsenic, has been shown to affect a child's IQ level and the development of ADHD.

34.     Several federal and state agencies have regulated cadmium.  Pursuant to Proposition 65, California has identified cadmium as causing developmental and male reproductive toxicity and has set an oral Maximum Allowable Dose Level ("MADL") of 4.1 µg (or 4.1 ppb) per day.

35.     The FDA and EPA have set a maximum allowable limit of cadmium of 5 ppb in bottled water and drinking water.  The World Health Organization ("WHO") has set a maximum allowable limit of cadmium in drinking water at 3 ppb.

36.     Consumer groups have advocated for even stricter levels of cadmium in foods.  For example, Healthy Babies Bright Futures has advocated that no measurable amount of cadmium should be in baby foods, while Consumer Reports has advocated for a limit of 1 ppb of cadmium in fruit juices.

37.     A study examining the effect of cadmium exposure on children concluded that it negatively impacted Full Scale IQ and in particular, boys.  According to the 2018 study, boys "exhibiting higher amounts of cadmium exposure had seven fewer IQ points than those exhibiting less cadmium exposure."[12]

38.     Another 2018 study found a link between cadmium exposure and ADHD and concluded that ADHD was more prevalent among children with the high cadmium exposure as compared to the control group.[13]

### Mercury

39.     Mercury is the number three substance on ATSDR's list of substances in the environment potentially posing a significant threat to human health.

40.     As with inorganic arsenic, lead, and cadmium, Healthy Babies Bright Futures advocates for a goal of zero levels of mercury in baby food.  Outside the baby food context, the FDA has set a

---

[12] Report at 12 (citing Klara Gustin, et al., *Cadmium Exposure and Cognitive Abilities and Behavior at 10 Years of Age: A Prospective Cohort Study* (Apr. 2018) (https://pubmed.ncbi.nlm.nih.gov/29459184/) (last visited Feb. 11, 2021).

[13] Min-Jing Lee, et al., *Heavy Metals' Effects on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony* (June 10, 2018) (https://pubmed.ncbi.nlm.nih.gov/29890770/) (last visited Feb. 11, 2021).

limit of 2 ppb of mercury in bottled water, while the EPA has set a limit of 2 ppb for drinking water.

41.     Mercury's effect on children's development has been studied in the context of a pregnant woman's exposure to mercury.  Pre-natal "mercury exposure has been consistently associated with adverse subsequent neuro-development."[14]

## THE EARTH'S BEST PRODUCTS

### Hain Represented that the Earth's Best Products are Safe and Suitable for Babies

42.     Hain manufacturers, distributes, and sells food for babies under the brand name Earth's Best.  To gain the trust of the consuming public, Hain touts itself as a family company that cares about the health of babies and kids and the foods they eat.  On its website at www.earthsbest.com, Hain promises to produce "pure, quality products" that parents "can trust."

43.     Defendant uniformly markets, advertises, represents, and warrants the Earth's Best Products as safe and suitable for consumption by babies.

44.     On the front of the label of the Earth's Best Products, Defendant depicts sitting and/or standing babies.  For example, with regard to the Earth's Best Whole Grain Rice Cereal, Hain represents that it is "Babies Perfect Solid Food" in conspicuous letters on the front of the label and on the back, Hain represents, "All Babies Begin Life 100% Pure . . . Feed Them Accordingly."  Further, Hain also says on the back of the product, "From the first spoonful on, you can be sure your baby's rapidly developing little body is getting only pure, healthy, organic, nutrition."  Defendant's labeling and statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the Earth's Best Whole Grain Rice Cereal products are safe and suitable for consumption by babies.

---

[14] Margaret R. Karagas, et al., *Evidence on the Human Health Effects of Low-Level Methylmercury Exposure* (June 1, 2012) (https://pubmed.ncbi.nlm.nih.gov/22275730/) (last visited Feb. 11, 2021).

45.     Below are examples of the front and back labels of the Whole Grain Rice Cereal:

 

46.     With regard to the Earth's Best Whole Grain Oatmeal Cereal, Hain represents that it is "For Babies Ready to Move Beyond Rice Cereal," in conspicuous letters on the front of the label and on the back, Hain represents, "All Babies Begin Life 100% Pure . . . Feed Them Accordingly." Defendant's labeling and statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the Earth's Best Whole Grain Oatmeal Cereal products are safe and suitable for consumption by babies.

47.     Below are examples of the front and back labels of the Earth's Best Whole Grain

Oatmeal Cereal product:




48.     Hain has offered the Earth's Best Sweet Potatoes Organic Baby Food in a jar in two

versions:  Sweet Potatoes Organic Baby Food 1, and Sweet Potatoes Organic Baby Food 2.  Hain

represents that Sweet Potatoes Organic Baby Food 1 is for babies four months or older and has

represented that Sweet Potatoes Organic Baby Food 2 is for babies six months or older.  Defendant's

labeling and statements, taken together and considered as a whole, from the perspective of a

reasonable consumer, conveyed that the Earth's Best Sweet Potatoes Organic Baby Food products are

safe and suitable for consumption by babies.

49.     Below are examples of the front and back labels of the Earth's Best Sweet Potatoes Organic Baby Foods products:



**Hain Knowingly Sold Unsafe, Finished Baby Foods Containing Heavy Metals**

50.     In February 2021, the U.S. House of Representatives issued the Report revealing to the public for the first time that certain companies knowingly sold baby foods containing excessive levels of heavy metals, such as inorganic arsenic, lead, cadmium, and mercury.  The Report identified Hain as one of those companies.

51.     According to the Report, Hain sold finished baby food products and ingredients with harmful heavy metals, such as inorganic arsenic, lead and cadmium, even though such ingredients exceeded internal levels that Hain set.

52.     For example, regarding inorganic arsenic, Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic, and ingredients testing as high as 309 ppb arsenic.

53.     With regard to lead, Hain used many ingredients with high levels.  Some ingredients that Hain used had as much as 352 ppb lead; in particular, 88 ingredients tested over 20 ppb lead and

six tested over 200 ppb lead.

54.     As to cadmium, Hain used ingredients that tested as high as 260 ppb; in particular, 102 ingredients tested had over 20 ppb cadmium.

55.     Hain has also added vitamin/mineral pre-mixes having high levels of toxic heavy metals into its baby foods.

56.     In a meeting with the FDA, Hain tried to justify its failure to adhere to its own internal limits based on what it called "theoretical calculations," even despite conceding to the FDA that its testing "underestimated final product toxic heavy metals."[15]  Further, while Hain admitted that it does not regularly test finished baby foods for inorganic arsenic, when it did test a small sample of finished product, its testing revealed 129 ppb inorganic arsenic.

57.     Testing conducted by the Healthy Babies Bright Futures group confirms that Earth's Best Products, including those identified here, had harmful heavy metals.

58.     Despite touting itself as a family company that cares about quality baby food that parents can trust, and conveying through statements on product labeling that the Earth's Best Products are safe and suitable for babies, Hain sold food products that were unsafe for babies and also failed to warn and disclose material facts, including that its products contained harmful heavy metals, including inorganic arsenic, lead, cadmium, and/or mercury.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Class initially defined as follows: All persons residing in the United States who purchased for personal, family, or household use, from 2017 to the present, one or more Earth's Best Products ("National Class").

60.     Plaintiff Philippe also brings this action on behalf of herself and a Massachusetts State class defined as follows: All persons residing in Massachusetts who purchased for personal, family, or household use, from 2017 to the present, one or more Earth's Best Products ("Massachusetts State Class").

---

[15] Report at 5.

61.     Plaintiff Rose also brings this action on behalf of herself and a Pennsylvania State class defined as follows: All persons residing in Pennsylvania who purchased for personal, family, or household use, from 2017 to the present, one or more Earth's Best Products ("Pennsylvania State Class").

62.     Excluded from the proposed National Class, the Massachusetts State Class, and the Pennsylvania State Class, are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

63.     Plaintiffs reserve the right to re-define any of the Class definitions prior to class certification and after having the opportunity to conduct discovery.

64.     This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

## Numerosity of the Proposed Class

### (Fed. R. Civ. P. 23(a)(1))

65.     The members of the Class are so numerous that their individual joinder would be impracticable. The Class comprises at least hundreds of thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

## Predominance of Common Questions of Fact and Law

### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

66.     Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class. The common legal and factual questions include, without limitation:

(a)     Whether Defendant knew its products contained harmful heavy metals that rendered their baby food products unsafe for babies;

(b)      Whether each Defendant's affirmative representations about its products, when considered as a whole, were false and misleading to reasonable consumers because the products were unsafe for babies, contained harmful heavy metals as Defendant's internal testing showed, and because Defendant's internal policies permitted the sale of the products with harmful levels of heavy metals;

(c)      Whether Defendant failed to warn and disclose material facts regarding their products, namely, that they were unsafe for babies; that they contained heavy metals or the level of heavy metals; that the Defendant's testing showed that their products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that the Defendant's policies permitted the sale of the products with harmful levels of heavy metals;

(d)      Whether Defendant violated the state consumer protection statutes alleged herein;

(e)      Whether Defendant was unjustly enriched; and

(f)      The nature of the relief, including damages and equitable relief, to which Plaintiffs and the members of the Class are entitled.

## **Typicality of Claims**

### **(Fed. R. Civ. P. 23(a)(3))**

67.      Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased Defendant's products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class members.

## **Adequacy of Representation**

### **(Fed. R. Civ. P. 23(a)(4))**

68.      Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation.

69.      Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

**Superiority of a Class Action**

**(Fed. R. Civ. P. 23(b)(3))**

70.     A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  There is no special interest in Class members individually controlling the prosecution of separate actions.  The damages suffered by individual members of the Class, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief**

**(Fed. R. Civ. P. 23(b)(1) and (2))**

71.     In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to

the Class as a whole.

## Issue Certification

## (Fed. R. Civ. P. 23(c)(4))

72.     In the alternative, the common questions of fact and law, set forth in Paragraph 66, are appropriate for issue certification on behalf of the proposed Class.

## FIRST CAUSE OF ACTION

**Violations of the Massachusetts Consumer Protection Law
(Mass. Gen. Laws, Ch. 93A)
(On Behalf of Plaintiff Philippe and the Massachusetts State Class)**

73.     Plaintiff Philippe hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

74.     Plaintiff Philippe brings this claim on behalf of herself and the Massachusetts State Class against Defendant Hain.

75.     Defendant, Plaintiff Philippe, and the Massachusetts State Class are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

76.     Defendant engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

77.     Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.  Defendant participated in misleading, false, or deceptive acts that violated the Massachusetts Act.

78.     In the course of business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Philippe and to the Massachusetts State Class members that the Earth's Best Products were safe and suitable for babies.  Defendant, however, concealed and suppressed material facts concerning the Earth's Best Products, including that the Earth's Best Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the Earth's Best Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

79.     Plaintiff Philippe and Massachusetts State Class members had no way of discerning

that Defendant's representations were false and misleading because Plaintiff Philippe and Massachusetts State Class members did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

80.     Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Earth's Best Products were safe and suitable for babies.  Defendant also failed to disclose and warn that the Earth's Best Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

81.     Defendant intentionally and knowingly misrepresented material facts regarding the Earth's Best Products with intent to mislead Plaintiff Philippe and the Massachusetts State Class.

82.     Defendant knew or should have known that their conduct violated the Massachusetts Act.

83.     Defendant owed Plaintiff Philippe and the Massachusetts State Class a duty to disclose the true and unsafe nature of the Earth's Best Products.

84.     Defendant's concealment of the true characteristics of the Earth's Best Products was material to Plaintiff Philippe and to the Massachusetts State Class.

85.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Philippe and the Massachusetts State Class, about the true nature of the Earth's Best Products.

86.     Plaintiff Philippe and the Massachusetts State Class would not have purchased the Earth's Best Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

87.     Defendant's violations present a continuing risk to the Massachusetts State Class as

19

well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

88.     Plaintiff Philippe and the Massachusetts State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.  Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Massachusetts Act.  Plaintiff Philippe and the Massachusetts State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

89.     As a direct and proximate result of Defendant's violations of the Massachusetts Act, Plaintiff Philippe and the Massachusetts State Class have suffered injury-in-fact and/or actual damage.

90.     Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiff Philippe and the Massachusetts State Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts State Class member.  Because Defendant's conduct was committed willfully and knowingly, each Massachusetts State Class member is entitled to recover up to three times actual damages, but no less than two times actual damages.

91.     Plaintiff Philippe and the Massachusetts State Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

92.     Pursuant to Mass. Gen. Laws, Ch. 93A § 9(3), on May 11, 2021, Defendant was provided with a written demand for relief.  Additionally, Defendant was provided notice of the issues raised in this cause of action and this Complaint.  Plaintiff Philippe and the Massachusetts State Class seek all damages and relief to which it is entitled.

93.     As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**Mass. Gen. Laws c. 106 § 2-314**
**(On Behalf of Plaintiff Philippe and the Massachusetts State Class)**

94.     Plaintiff Philippe hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

95.     Plaintiff Philippe brings this claim on behalf of herself and the Massachusetts State Class against Defendant Hain.

96.     Hain is and was at all relevant times a "merchant" with respect to Earth's Best Products under M.G.L c. 106 § 2-104(1) and is a "seller" of Earth's Best Products under § 2-103(1)(d).

97.     The Earth's Best products are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 § 2-105(1).

98.     A warranty that the Earth's Best Products were in merchantable condition and fit for the ordinary purpose for which baby food products are used is implied by law pursuant to M.G.L. c. 106  § 2-314.

99.     The Earth's Best Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Earth's Best Products are used.  Specifically, Defendant's Earth's Best Products are inherently defective in that they contain harmful levels of heavy metals and thus are not suitable and not safe for consumption by babies.

100.     On May 11, 2021, Defendant was provided reasonable notice of its breach and an opportunity to cure by way of a demand letter sent by Plaintiffs.  Defendant was also provided notice by the numerous consumer class action complaints filed against it.

101.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Philippe and the Massachusetts State Class members have been damaged in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
73 P.S. § 201-1 *et seq.*
(On Behalf of Plaintiff Rose and the Pennsylvania State Class)**

102.    Plaintiff Rose hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

103.    Plaintiff Rose brings this claim on behalf of herself and the Pennsylvania State Class against Defendant Hain.

104.    Plaintiff Rose, Defendant, and the members of the Pennsylvania State Class are "persons" within the meaning of 73 P.S. § 201-2(2).

105.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201 3.

106.    In the course of business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Rose and the Pennsylvania State Class that the Earth's Best Products were safe and suitable for babies.  Defendant, however, concealed and suppressed material facts concerning the Earth's Best Products, including that the Earth's Best Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the Earth's Best Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

107.    Plaintiff Rose and the Pennsylvania State Class had no way of discerning that Defendant's representations were false and misleading because Plaintiff Rose and the Pennsylvania State Class did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

108.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Earth's Best Products were safe and suitable for babies.  Defendant also failed to disclose and warn that the Earth's Best Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant

22

did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

109.    Defendant intentionally and knowingly misrepresented material facts regarding the Earth's Best Products with intent to mislead Plaintiff Rose and the members of the Pennsylvania State Class.

110.    Defendant knew or should have known that their conduct violated the Pennsylvania UTPA.

111.    Defendant owed Plaintiff Rose and the Pennsylvania State Class a duty to disclose the true and unsafe nature of the Earth's Best Products.

112.    Defendant's concealment of the true characteristics of the Earth's Best Products was material to Plaintiff Rose and the Pennsylvania State Class.

113.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Rose and the Pennsylvania State Class, about the true nature of the Earth's Best Products.

114.    Plaintiff Rose and the Pennsylvania State Class would not have purchased the Earth's Best Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

115.    Defendant's violations present a continuing risk to Plaintiff Rose and the Pennsylvania State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

116.    Plaintiff Rose and the Pennsylvania State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. Plaintiff Rose and the Pennsylvania State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair

acts and practices made in the course of Defendant's business.

117.    As a direct and proximate result of Defendant's violations of the Pennsylvania UTPA, Plaintiff Rose and Pennsylvania State Class members have suffered injury-in-fact and/or actual damage.

118.    Pursuant to 73 P.S. § 201-9.2(a), Plaintiff Rose and the Pennsylvania State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

## FOURTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability**
**13. Pa. Cons. Stat. § 2314**
**(On Behalf of Plaintiff Rose and the Pennsylvania State Class)**

119.    Plaintiff Rose hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

120.    Plaintiff Rose brings this claim on behalf of herself and the Pennsylvania State Class against Defendant Hain.

121.    Hain is and was at all relevant times a "merchant" with respect to Earth's Best Products under 13 Pa. Const. Stat. § 2-104 and is a "seller" of Earth's Best Products under § 2-103(a).

122.    The Earth's Best products are and were at all relevant times "goods" within the meaning of 13 Pa. Const. Stat. § 2-105(a).

123.    A warranty that the Earth's Best Products were in merchantable condition and fit for the ordinary purpose for which baby food products are used is implied by law pursuant to 13 Pa. Const. Stat. § 2-314.

124.    The Earth's Best Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Earth's Best Products are used.  Specifically, Defendant's Earth's Best Products are inherently defective in that they contain harmful levels of heavy metals and thus are not suitable and not safe for consumption by babies.

125.    On May 11, 2021, Defendant was provided reasonable notice of its breach and an opportunity to cure by way of a demand letter sent by Plaintiffs.  Defendant was also provided notice

by the numerous consumer class action complaints filed against it.

126.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Philippe and the Massachusetts State Class members have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**Unjust Enrichment**
**(On Behalf of Plaintiffs, the National Class, Massachusetts State Class,**
**and the Pennsylvania State Class)**

127.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

128.     Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's Earth's Best Products that were unsafe and not suitable for babies.  Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

129.     Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits.  Among other things, Defendant failed to disclose and warn that the Earth's Best Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

130.     Defendant retained those benefits even though the Earth's Best Products contain harmful heavy metals that render the Earth's Best Products unsafe and unsuitable for consumption by babies.  If Plaintiffs and Class members had known the true nature of the Earth's Best Products, they would not have paid money for them or would have paid less.

131.     Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## SIXTH CAUSE OF ACTION

**Fraud**
**(Concealment and Omissions)**
**(On Behalf of Plaintiffs, the National Class, the Massachusetts State Class,**
**and the Pennsylvania State Class)**

132.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

133.     Defendant made affirmative misrepresentations, partial-truths, and purposefully concealed the true facts on each package of the Earth's Best Products.  Defendant made these misrepresentations, partial truths to, and concealed the truth from, Plaintiffs and Class members about the Earth's Best Products knowing that the products contained harmful heavy metals, the level of heavy metals, or that internal policies permitted Defendant to sell products containing harmful heavy metals.

134.     Defendant's representations and partial truths were false. As a result of Defendant's false and misleading statements and deceptions, and omissions, Defendant achieved its desired result—to sell products that it otherwise would not have or at higher prices.

135.     Defendant knew that its misrepresentations and omissions in this regard were false and/or misleading.  Defendant has been aware of the falsity and misleading nature of their affirmative misrepresentations and omissions for several years.

136.     Defendant had a duty to disclose the material facts alleged herein because it had exclusive and superior access to, and knowledge about, the levels of heavy metals in their foods and their internal testing policies and limits.  Defendant also had a duty to disclose because it made affirmative representations to Plaintiffs and Class members, and the general public about the nature, quality, and characteristics of the Earth's Best Products.  Specifically, Defendant affirmatively represented that the Earth's Best Products were suitable and safe for babies when it knew this was false and/or misleading.  This duty applied at the time Plaintiffs and Class members purchased the Earth's Best Products, and it continues to apply today.

137.     Defendant failed to disclose and warn that the Earth's Best Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal

testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

138.    Defendant intended for Plaintiffs and Class members to rely on their misrepresentations and omissions.  Defendant engaged in this course of conduct to sell the Earth's Best Products in the United States market with disregard of the unsafe nature of the products for babies.  Defendant's acts were done wantonly, maliciously, oppressively, and deliberately, with the intent to defraud Plaintiffs and Class members and with reckless and conscious disregard for Plaintiffs' and Class members' rights.

139.    Defendant's misrepresentations, partial-truths, and omissions were material to Plaintiffs' and Class members' decision to buy the Earth's Best Products.  Defendant was aware—and exploited—the fact that Plaintiffs and Class members turned to Hain and trusted Hain to sell safe baby food and to disclose material facts.

140.    Plaintiffs and Class members could not have discovered the truth about the Earth's Best, Products as Defendant concealed these facts from the public until it was asked to comply with a congressional investigation and the Report became public.  Plaintiffs and Class members could not have otherwise known of Defendant's scheme and ongoing deception.

141.    Plaintiffs and Class members reasonably relied on the representations and omissions in purchasing the Earth's Best Products.  Had Defendant disclosed to Plaintiffs and Class members the material facts alleged herein on the product packaging, Plaintiffs and Class members would have seen such disclosures as they relied on Defendant's representations.  Further, had Plaintiffs and Class members known the truth about the Earth's Best Products and the true characteristics of the products, they would not have acted as they did.  Plaintiffs and Class members would not have purchased the Earth's Best Products, or they would have paid less for such products.

142.    Plaintiffs and Class members were injured by their reliance on Defendant's misrepresentations, partial-truths, and omissions.  Plaintiffs and Class members have been damaged because they purchased products that were unsafe for babies and not as represented, and, because of that deception have been damaged in an amount to be proven at trial.

27

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, prays for relief and judgment against Defendant as follows:

A.       Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as a representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

B.       Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

C.       Awarding Plaintiffs and the Class appropriate relief, including actual and statutory damages;

D.       For punitive damages;

E.       For declaratory and equitable relief, including restitution and disgorgement;

F.       For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

G.       Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

H.       Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

I.       Awarding pre-judgment and post-judgment interest; and

J.       Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 17, 2021

By:                                      */s/ Douglas J. McNamara*

> Douglas J. McNamara (DM6069)
> Geoffrey A. Graber (*pro hac vice* pending)
> Brian E. Johnson (*pro hac vice* forthcoming)
> Paul Stephan (*pro hac vice* forthcoming)
> **COHEN MILSTEIN SELLERS & TOLL, PLLC**

1100 New York Ave, 5th Floor
Washington, DC 20005
T: 202-408-4600
F: 202-408-4699
dmcnamara@cohenmilstein.com
ggraber@cohenmilstein.com
bejohnson@cohenmilstein.com
pstephan@cohenmilstein.com


Eric A. Kafka (EK8746)
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Rosemary M. Rivas (*pro hac vice* pending)
Mark Troutman (*pro hac vice* pending)
Rosanne L. Mah (pro hac vice forthcoming)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 110
Oakland, California 94612
T: 510-350-9700
F: 510-350-9701
rmr@classlawgroup.com
mht@classlawgroup.com
RLM@classlawgroup.com


*Attorneys for Plaintiffs and the Proposed
Class Members*